



**RECEIVED**
QR
12/6/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| BRITTANEY M. STEVENSON, *an individual,*<br><br>Plaintiff,<br><br>v.<br><br>JUDGE NICOLE CASTILLO, an *individual and in her capacity as an agent of state government;* COOK COUNTY, *a state government agency;* ATTORNEY ROBERT PRINICE, an *individual and in his capacity as officer of a state court;* ATTORNEY COLLIN CARLUCCI, an and *individual in his capacity as officer of a state court*; ROYAL OAKS CONDOMINIUM ASSOCIATION, an *Illinois Corporation*, OAK LAWN POLICE, *a municipal law enforcement agency*, and DAWGS, Inc., an Illinois Corporation.<br><br>Defendants. | **1:24-cv-12604**<br>**Judge Judge Sara L. Ellis**<br>**Magistrate Judge Heather K. McShain**<br>**RANDOM/ CAT. 2**<br><br>Case No.<br><br><br>Judge _____<br><br>Magistrate Judge _____ |

## PLAINTIFF'S VERFIED SECTION 1983 COMPLAINT FOR VIOLATION OF FOURTH, FIFTH, AND FOURTEENTH AMENDMENT RIGHTS AGAINST ALL DEFENDANTS WITH JURY DEMAND

Plaintiff, BRITTANEY STEVENSON ("Plaintiff" or "STEVENSON") files her Complaint against the named Defendants and with respect to her claims of actionable volatile, discriminatory, and retaliatory conduct on behalf of the Defendants, states the following:

### NATURE OF THE CLAIMS

1.     This action is for monetary damages and injunctive relief, pursuant to Section 1983 of the Civil Rights Act, also known as, 42 U.S.C. § 1983.

2.     This action is to address Defendants unlawful practices against Plaintiff as a citizen of these United States, who is afforded certain rights under the U.S. Constitution and in particular the rights of protection guaranteed under the Fourth, Fifth, and Fourteenth Amendments.

3.     Plaintiff alleges that Defendants engaged in a pattern and practice of color of law violations and the promulgation of a volatile environment intentionally and systemically, in and so doing has and continues to violate Plaintiff's expressed rights under these Amendments.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the Section 1983 claims herein pursuant to 42 U.S.C. § 1983, as this action involves federal questions regarding deprivation of Plaintiff's civil rights regarding unlawful seizure of her property, unlawful arrest, and unlawful barring of Plaintiff's access to due process.

5.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to these actions, including Defendants' unlawful practices alleged herein, occurred in this District.

## THE PARTIES

6.     Plaintiff, Brittaney M. Stevenson is a citizen of the United States, and is and was at all material times herein, a resident at 10048 S. Pulaski Rd, #3K, Oak Lawn, IL 60453.

7.     Defendant, Judge Nicole Castillo ("Judge Castillo") is a currently seated Cook County Associate Judge. Judge Castillo's principal location of business is Fifth Municipal District, Bridgeview Courthouse, 10220 S. 76th Avenue, Bridgeview, IL 60455, Courtroom 0203.

8.     Defendant Attorney Robert Prince ("Prince") is employed with Cervantes, Chatt, and Prince, P.C. and as such his principal place of business is l00 Tower Dr, Ste 120, Burr Ridge, IL 60527.

9.     Defendant Attorney Collin Carlucci ("Carlucci") is employed with Cervantes, Chatt, and Prince, P.C. and as such his principal place of business is l00 Tower Dr, Ste 120, Burr Ridge, IL 60527.

10.     Defendant, Cook County ("Cook County") is a state government agency which operates year-round January through December and operates the court system for the Chicagoland area that encompasses Cook County. Defendant's principal location of business is 118 N. Clark Street,

Chicago, IL 60602. As such Cook County government operates and oversees the work of the Cook County Sheriff's Department.

11.     Defendant, Celtic Property Management ("Celtic") is an Illinois company whose primary business is managing and daily operations for real estate properties. As such it manages the Royal Oaks property. Its principal place of business is located at 3100 Theodore Street, Joliet, IL 60435.

12.     Defendant Royal Oaks Condominium Association ("Royal Oaks"), is an Illinois corporation founded to operate and run the Royal Oaks community and as such its principal place of business is located at 10048 S. Pulaski Rd, Oak Lawn, IL 60453.

## FACTUAL ALLEGATIONS COMMON TO ALL DEFENDANTS

13.     Plaintiff, Stevenson currently owns and resided at the condominium located at 10048 S. Pulaski Rd, #3K, Oak Lawn, IL 60453 ("the condo").

14.     That Stevenson bought the condo via cash payment (in excess of $100,000) in full in or about November 2020.

15.     That at the time Stevenson purchased the condo it was self-managed by the Royal Oaks Condominium Association under a Board of Directors ("the Board") with then President Jeff Kohler.

16.     That sometime after February 2021 Mary Preissler ("Preisler"), non-owner and building tenant of unit 2B, installed herself as HOA President.

17.     That from the above time to present Preissler held herself out as HOA President, conducted HOA business, has spent and allocated large sums of HOA monies to unspecified projects, restricted owners use of common elements, and paid herself out of HOA funds.

18.     That in or about August 2021 Preissler effectuated and signed an unverified and unvetted lien against Plaintiff's property and filed it within Illinois state court.

19. That in or about May 2022 Preissler and HOA Treasurer, Judy Barns ("Barns") hired the Celtic Property Management Company ("Celtic") without providing proper notice or having a meeting of the owners.

20. That from the time that Celtic took over operations for Royal Oaks Stevenson had requested a proper accounting in accordance with the Illinois Condominium Property Act ("ICPA").

21. At no time from approximately May 2022 to August 7, 2023, was Stevenson provided with a legal accounting per the statute, despite her varied and numerous requests.

Royal Oaks, Celtic, and their Counsel begin their campaign of deceit aimed at Stevenson

22. That sometime in or about late July 2023 Royal Oaks initiated an eviction action against Stevenson, said action in state court has case number 20235004405.

23. That at the time of the case's initiation, Stevenson had recently requested yet *another* accounting, which was not provided.

24. That upon being made aware of the pending eviction and in order to reorganize her debt and pay it down, Stevenson informed Royal Oaks' Counsel of Cervantes, Chatt, and Prince that she intended to file bankruptcy in or about early August 2023.

25. That as a result of lengthy email conversation, Stevenson requested an accurate and current accounting statement of her balance due and owing from Counsel, Collin Carlucci on or about August 7, 2023. See Email Exchange between Carlucci and Stevenson attached as **Group Exhibit 1**.

26. At the time Carlucci presented Stevenson with the accounting he did not make any mention of errors, discrepancies, or the like even though Stevenson had always mentioned her concerns about billing accuracy to Royal Oaks, Celtic, and their Counsel; Stevenson was led to believe the billing statement provided to her at that time was accurate by Carlucci. See August 7th Accounting Statement attached as **Exhibit 2**.

27. That sometime after the August 7th statement was provided to Stevenson, Royal Oaks and Carlucci offered Stevenson a settlement opportunity.

28.    Said settlement agreement was born out of the conversations previously had between Stevenson and Carlucci and were directly based upon the *accounting* provided in the August 7th statement.

29.    That on or about August 21st Stevenson was presented with an draft Agreed Order by Carlucci.

30.    Said Agreed Order stipulated in pertinent part, *"...as of August 21, 2023, there is $9,431.97 due and owing to the Association for outstanding common expenses, attorney's fees and costs..."*. See August 21st Agreed Order attached as **Exhibit 3**.

31.    Again, and at no time before, during, or reasonably after the Agreed Order's entry did Carlucci inform Stevenson that he or his clients were aware of billing errors, and thus Counsel and his clients narrative regarding the accounting was continued to be taken as fact.

32.    That subsequent to the agreed Order, Stevenson made at least three (3) payments to Royal Oaks between August and September 2023 in the amount of approximately $2700.

33.    That sometime in or about October 2023, Stevenson became ill and fell behind on payments.

34.    That at that time she reached out to Royal Oaks and Celtic to inform them and obtain an extension to comply with the Agreed Order, she was ignored.

The Eviction Action

35.    That sometime in May 2024 Counsel for Royal Oaks and Celtic, Prince and/or Carlucci elected to revitalize their erroneous eviction suit against Stevenson.

36.    That Counsel renewed the suit based on Stevenson's alleged "non-compliance with the September 2023 Agreed Order", see Royal Oaks Motion to Vacate the Dismissal attached as **Exhibit 4**.

37.    That said motion was granted on June 5th and a prove-up hearing was scheduled for June 26th.

38.     That Stevenson was unable to make the initial hearing due to ongoing illness and thus filed a Motion to Vacate the Judgment on June 7th, and appeared via Zoom for hearing on June 26th.

39.     That at the time, District Five was undergoing changes in judicial calendaring and recently installed Judge Nicole Castillo was appointed to evictions from Judge Matthew Carmody.

40.     At that time Stevenson informed Judge Castillo that she was suffering through severe and chronic illness and needed ample time to prepare for a trial or hearing on the eviction matter.

41.     Also, Stevenson petitioned the court at that time for leave to issue subpoenas for records and testimony upon the association due to her ongoing concerns of fraudulent billing, but the state court denied Stevenson's request.

42.     The matter was continued regarding Stevenson's Motion to Reconsider to July 2nd, at which time Stevenson and Counsel appeared before the court on Zoom and once again Stevenson informed the court that she would like leave to issue subpoenas for records and testimony upon the association due to her continued concerns, once *again* she was denied this opportunity by the court and a trial/hearing was scheduled for July 31st.

43.     Though Stevenson appeared present and ready for court via zoom on July 2nd, this court's order states otherwise and intentionally notated that "Defendant failing to appear…". See State Court's July 3rd Order attached as **Exhibit 5**.

44.     That in the meantime between July 2nd and July 31st, Stevenson suffered through a bout of serious medical illness whereby she was rushed to the hospital via ambulance and admitted.

45.     That on July 31st, Stevenson again showed present for court via Zoom and after informing the court of her recent and ongoing chronic illness she requested a "brief continuance of trail for no more than a week or two" so that she heal and recover properly and may gather evidence and witnesses for testimony.

46.     Judge Castillo reprimanded Stevenson unnecessarily, berated her, muted her, and only considered testimony and argument from Royal Oaks and Celtic Counsel, Carlucci.

47.     At the time that Judge Castillo finally allowed Stevenson to speak again she pleaded with the court to at least provide her with one week's time so that she could come in-person for a hearing, Judge Castillo swiftly rejected Stevenson's pleas and informed threatened if she did not show up in court on Friday August 2nd for court she would "rule in favor of the Plaintiffs".

48.     Stevenson protested as best she could with lack of voice due to recovery from laryngitis amongst other illnesses, but Judge Castillo was unmovable and even after Stevenson informed her that she had previously scheduled medical appointments for herself and her kids on Friday for follow-up, as she was still under doctor's care, Castillo proceeded to make good on her threat and because Stevenson informed that she could not make court within the two (2) days' time, Castillo ruled in favor of Royal Oaks, without a hearing, without a trial, without testimony and without evidence. See July 31st Eviction Order attached as **Exhibit 6**.

49.     That subsequent to the July 31st Order's entry, Stevenson filed a timely Motion to Vacate said Judgment on or about August 26th. See Stevenson's August 26th Motion to Vacate Eviction attached as **Exhibit 7**.

50.     That said Motion was fully briefed by October 2024 and a hearing date was previously scheduled for October 16, 2024.

51.     That on October 16th, both parties appeared in court, Stevenson *pro se* and Royal Oaks via Counsel, Carlucci.

52.     That the court heard testimony from both parties, and once again Stevenson expressed her concerns regarding the fraudulent billing and stated that she had no way to obtain a proper accounting as Royal Oaks and their Counsel had refused to provide the same to her.

53.     That *yet* again Stevenson requested that the court provide her with an opportunity to issue subpoenas for records and testimony upon the association, to which this court again remarked "no".

54.     Moreover, in this same hearing, the court stated that there was no evidence that Stevenson had made any payments pursuant to the agreement, Stevenson asserted that she had made payments pursuant to the agreement and *after* its inception and had been compliant to a point.

55.     Stevenson attempted to provide the court with the proofs of such payments but informed the court that she would need to issue citations to past banking institutions to do so. The court did not consider Stevenson's request.

56.     Stevenson then attempted to pull the payments up on her phone as designated by payment receipts received from Celtic, but the court weirdly replied, "if you don't trust the billing why would I".

57.     At that point, Stevenson was left with no vehicle to litigate her case, she had been repeatedly denied the opportunity to investigate the validity of the claims and charges against her by the state court.

58.     That toward the conclusion of the hearing and as the parties were preparing to leave, Carlucci walked back toward the podium and quietly attempted to inform the court, "Your honor our office has found some accounting errors which we have not made Ms. Stevenson aware of *yet*"[paraphrased].

59.     Upon Stevenson overhearing Carlucci's claims she requested to made aware of what the certain "errors" were in reference to and when they were discovered.

60.     Carlucci asserted that he "don't have the information off hand" and upon Stevenson asking the court that it put it in an order that Carlucci be required to provide her with the evidence and information right away, Carlucci attested "that is not necessary your honor, I will provide Ms. Stevenson with the information as soon as I get back to my office today".

61.     However, and unfortunately for Stevenson, Carlucci did not keep his word and she did not receive the information concerning Carlucci's revelation that day.

62.     In fact, Stevenson waited a full twenty-four (24) hours and called Carlucci's office to ascertain when she would receive the information but got no response.

63.     Another day passed and still Stevenson received no relevant information from Carlucci as promised but the court entered its Order concerning the October 16th hearing on October 18th. See October 18th Order attached as **Exhibit 8**.

64.     In the October 18th Order, the court stated with specificity, "*The purpose of a motion to reconsider is to bring to the Court's attention newly discovered evidence which was not available at the time of the hearing, changes in law or errors in the Court's previous application of the law*" (emphasis added).

65.     The court further iterated, "Stevenson failed to present any evidence or documents to support her assertions that the association's accounting was inaccurate" (emphasis added).

66.     That on or about October 22nd, Carlucci provided evidence to Stevenson regarding a specific error in the HOA billing that was previously unknown to her. See Carlucci's October 22nd Email as **Exhibit 9**.

67.     As Stevenson had mentioned in several motions, and in court the information known to Counsel and his clients since about April 2023 was intentionally withheld from Stevenson so as to affect an orchestrated outcome.

68.     That in response to this new found evidence, Stevenson filed an "apt[ly]" timed Motion to Reconsider this court's October 18th ruling on October 29, 2024, in accordance with Section 2-1203 and Ill. Sup. Ct. R. 274.

69.     Said motion was titled accurately and attacked the aforementioned judgment individually and within context, thus satisfying the requirements of the Illinois Code and Statute; and affording Stevenson the specific protections outlined in these laws, i.e. the "stay of enforcement of judgment".

<u>Stevenson's Right to Due Process is Violated</u>

70. Yet and volatilely, instead of following the rule and color of law, this court, Royal Oaks and their Counsels chose not to wait for the culmination of due process which would have deferred the matter for a hearing in front of the state court on December 5th, in order to examine the newly discovered evidence and hear testimony of both parties, this court, Royal Oaks and their Counsel allowed an unlawful eviction to take place, which, unlawfully removed Stevenson and her children from their home, possessions, and property on November 12th.

71. That in response to this egregious violation, Stevenson filed an Emergency Motion for TRO and Preliminary Injunction ("the Emergency TRO") Against Royal Oaks on November 12th. See attached as **Exhibit 10**.

72. In the Emergency TRO Stevenson explains in explicit detail the timeframe of events, the applicable laws which she followed and which should have afforded her certain due process rights, and the violations enacted by Royal Oaks Counsel.

73. That the Emergency was set for hearing almost ten (10) days out to November 21st, which prejudiced Stevenson further.

Stevenson is violated by Rich Marasco, other Royal Oaks Agents, and Oak Lawn Police

74. That due to Stevenson's belief that she had been removed from her home unlawfully, she hired several professionals to come and change her locks so that she could secure her home, property, and assets.

75. That on or about November 14th, Stevenson was in her home when Celtic agent, Rich Marasco showed up and began harassing her.

76. Marasco made several verbal threats to Stevenson including "your days are numbered", " we will get you", and "you are going to be sorry".

77. At the time though unbeknownst to Marasco, Stevenson was in possession of an Emergency Order of Protection against Marasco due to prior and varied promulgation of harassment and assault against her. See Marasco Emergency OP attached as **Exhibit 11**.

78.     Thus, and upon the advisement of Domestic Relations Judge Torrie Corbin, upon Marasco showing up to Stevenson's residence and making threats she called Oak Lawn Police for help.

79.     Upon Oak Lawn Police showing up Stevenson informed them that she was being harassed by Marasco and that she would "like him to leave now".

80.     The police and on duty sergeant ignored Stevenson's pleas, mocked her, laughed at her and refused to tell Marasco to leave her presence and property.

81.     That Stevenson informed Oak Lawn PD that she had obtained an Emergency Order of Protection against Marasco and that his actions were in violation of that order.

82.     Stevenson handed the paperwork to one of the officers for review and told them that the same was effective as of "that afternoon".

83.     Stevenson further reminded the officer's per the Judge's instruction they were to serve the paperwork upon Marasco as he was in their presence and thus they had jurisdiction to serve the paperwork.

84.     Oak Lawn officers informed Stevenson that the paperwork was "fraudulent" and that she had "appeared to manufacture it", though Stevenson showed them the stamp and seal of the domestic relations court.

85.     At that point, Oak Lawn PD stated they "refuse to enforce or serve the order of protection", and that Stevenson "should go get something real".

86.     Stevenson insisted the Order of Protection was "real" and "enforceable" and that her rights were being violated by allowing Marasco to stay and continue to hurl threats and insults at her in front of them.

87.     Oak Lawn PD ignored Stevenson and allowed Marasco to sign a falsified complaint against her for Criminal Trespassing on her *own property*.

88.     Officers walked Ms. Stevenson into her house place the citation on her counter and stated there was nothing more they could do and that she should "appear in court on the court date given".

Stevenson's Home and Property is Unlawfully Seized

89.     The next day, November 15th Stevenson left out of her home and headed to an appointment with her sister.

90.     Stevenson was gone from approximately 8 a.m. to 5 p.m., at around approximately 3 p.m., Stevenson received a call from her brother-in-law that Royal Oaks had hired DAWGS to barricade her home with a steel door. See Photos attached as **Exhibit 12**.

91.     That on the evening of November 15th after returning home and seeing the barricade on the door for herself, Stevenson called Oak Lawn Police for assistance.

92.     Stevenson informed Oak Lawn Police that she had been unlawfully locked out of her home by Royal Oaks and its agents and requested access to her home and property immediately.

93.     Oak Lawn Police vehemently refused, threatened Stevenson with jail, yelled at her, cursed at her, and again refused to enforce now three (3) active emergency orders of protection against Royal Oaks' agents, Rich Marasco, Mary Preissler, and Judy Burns.

94.     Upon Stevenson asking the on scene sergeant whether he was going to serve and/or enforce the orders of protection he vehemently shouted "no!" and told Stevenson not to call them back or she would go to jail.

95.     Stevenson left the lobby and returned to survey her property on the third floor, while standing and calmly talking to one of the on site officers, Preissler came onto the third floor and began to verbally harass Stevenson and sister.

96.     Preissler made threats of bodily harm, spat at Stevenson and her sister and charged at Stevenson all in front of the police officers, who stepped in front of Stevenson to shield her.

97.     At that time, the sergeant who had previously threatened Stevenson in the lobby came off the elevator and instead of arresting Preissler for violating the Order of Protection, arrested Stevenson placing her in handcuffs, and escorted her to the police car.

98.     Stevenson was told she could not protest or move and was not read her Miranda rights.

99.     Later and while in police custody, though Stevenson had previously asked the officers to retrieve her medications, Stevenson suffered a medical emergency and was transported to Advocate Christ Medical Center via ambulance.

The Postjudgment actions and ongoing violations

100.    That from that time to present Stevenson and her family have been rendered homeless by the deliberate actions, intentional negligence, careless and recklessly disregard for applicable laws and due process by all Defendants mentioned herein.

101.    That from that time to present Stevenson has been in ongoing litigation in attempts to alert the court of its misapplication of law, newfound evidence not previously available, and nefarious actions of Royal Oaks and others.

102.    Still, try as Stevenson might, the court has not been inclined to hear Stevenson out on *any* of this life altering matters.

103.    That Stevenson appeared in court on November 21st in-person and was ready to present argument on her motions including, the Emergency TRO, the Emergency Motion for Clarification, and the Rule to Show Cause, see the latter two motions attached as **Group Exhibit 13**.

104.    That shockingly, though Stevenson had timely filed said motions, Counsel was present in-court, and provided evidentiary support for her arguments, the state court choose to unilaterally "deny all motions", again without argument, without legal standing, and without care.

105.     Stevenson protested that she had a right to bring said motions due to the ongoing situation and volatile behavior of Royal Oaks and its agents against applicable state law, however the court stated that Stevenson was "wrong" and that she was "barred in accordance with Ill. Sup. Ct. R. 274", which only allowed for "one postjudgment motion to be filed".

106.     Stevenson asked for clarity on the Rule and what more it stated and the court iterated "we are done, I am done with this" "your motions are denied" and proceeded to cancel all future court dates even the December 5th Motion to Reconsider hearing.

Counsel for Royal Oaks Issues a Wrongful Citation to Discover Assets

107.     Later that day Stevenson checked her account with the Chicago Post Office Employees Credit Union ("CPOECU").

108.     She was floored and dismayed to find her account in the negative for approximately -$32,886.24, see CPOECU Lien attached as **Exhibit 14.**

109.     Per Stevenson's investigation, information and belief, Counsel for Royal Oaks filed and *enforced* a fraudulent Citation to Discover Assets against Stevenson in order to commander her assets held at CPOECU on or about November 4th.

110.     The ironic part is that at that time Stevenson's Motion to Reconsider had been on filed and scheduled for hearing for several days, the eviction action was still pending, and there had been no hearing to order Stevenson's assets liened due to said Citation. All in violation of applicable Section 2-1402 of Illinois law which mandates that the judgment debtor "appear in court" before any of these actions take place.

111.     Despite Counsels knowledge of this information, it proceeded to threaten the CPOECU with "legal action" if the judgment was not only entered but "doubled" per CPOECU Vice President Jennings.

112.    Stevenson's account was liened and frozen from November 15th to December 2nd unlawfully and based upon the erroneous Citation filing and action of Royal Oaks' Counsel.

113.    Stevenson had no access to her funds nor access to receive or deposit funds which further placed Stevenson and her family in dire straits.

114.    That subsequent to the erroneous lien being enforced, Stevenson was left with no choice but to declare bankruptcy via Chapter 13 on November 22nd. See BK NOF attached as **Exhibit 15**.

115.    That Stevenson immediately provided a copy of the Notice to Counsel via email and informed them of her rights, however Counsel staunchly maintained that said automatic stay was "not applicable" to their client.

DAWGS unlawfully restricts access to Stevenson's home and seizes her property

116.    As for DAWGS who had unlawfully boarded up Stevenson's property and was complicit in the unlawful seizure of property within the home, it remained silent, even after receiving several emails and a Demand Letter. See DAWGS Demand attached a**s Exhibit 16**.

117.    That recently, as of November 26th, one (1) day before Thanksgiving, Royal Oaks and their Counsel were given an opportunity turn the tide and make things right.

118.    Upon emergency motion filed in state court by Stevenson she articulated that the judgment against her had been satisfied with Royal Oaks via payments delivered to it via its attorney in the form of certified funds in the amount of $13,552.62.

119.    That the state court stated it did not have jurisdiction over the matter because Stevenson and thus is needed clarity from that court but urged Royal Oaks to "come to an agreement with Stevenson".

120.     That on the afternoon of November 26th, the parties appeared in front of bankruptcy court Judge Timothy Barnes.

121.     Judge Barnes ascertained testimony from both parties and upon having a "good understanding" of the facts he urged Royal Oaks to "make a deal with Ms. Stevenson", but Royal Oaks refused.

122.     Thus, Judge Barnes entered his order and the parties still have not been able to come to a legally equitable and viable agreement, however and all the while Defendants, Prince, Carlucci, Royal Oaks, and Judge Castillo continue to violate her expressed constitutional rights.

### <u>COUNT I</u>
### VIOLATION OF STEVENSON'S 14TH AMENDMENT RIGHT TO DUE PROCESS
### Stevenson v. All Defendants

123.     In the alternative and without prejudice to any of Plaintiff's other claims, Plaintiff re-states and re-alleges every allegation contained in Paragraphs 1 through 122 of this Complaint as though set forth more fully herein.

124.     The relevant part of the 14th Amendment to the U.S. Constitution states in pertinent part, "*No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; **nor shall any State deprive any person of life, liberty, or property, without due process of law;** nor deny to any person within its jurisdiction the equal protection of the laws*".

125.     That Stevenson was born and raised in the United States and is thus a U.S. citizen.

126.     That as such Stevenson is guaranteed the expressed protections of the U.S. Constitution.

127.    That from about November 12, 2024 to present Stevenson's expressed right not to be deprived of life, liberty or property, without due process of law was violated by all named defendants in this action.

128.    That on the morning November 12th, Cook County Sheriff's entered Plaintiff's home without a proper eviction order.

129.    That Cook County Sheriff's ("the Sheriffs") informed Stevenson that they were "carrying out an eviction order from October 18th".

130.    At that moment the Sheriffs' actions were volatile of Stevenson's right to due process before being deprived of her property.

131.    Stevenson informed the Sheriffs that there was no valid eviction order from October 18th, further Stevenson informed the Sheriffs that she had filed a timely Section 2-1203 postjudgment motion in accordance with Ill. Sup. Ct. R. 274 to reconsider said October 18th Order on October 29th; and that Notice had been provided to the Sheriffs office via us regular mail and fedex per proper protocol on October 31st and November 9th, respectively. See Sheriff's Notice and Mailing Receipts attached as **Exhibit 17**.

132.    Stevenson informed the Sheriffs that due to filing such a motion and the court date having not passed she was legally entitled to a "stay of enforcement of judgment" as articulated in Section 2-1203 and thus the eviction must not proceed.

133.    That a certain female sheriff approached Stevenson and told her to "go to the court house to get the evidence of that and bring it back…no one is moving you out of your house today", but that remained untrue. At that moment, the Sheriffs' actions were volatile and deprived Stevenson of her property without due process of law.

134.     With that belief in hand, Stevenson went to the courthouse to obtain a file-stamped copy of the October 29th Motion to Reconsider, see attached as **Exhibit 18**.

135.     While there and out of an abundance of caution, Stevenson filed an Emergency Motion for TRO and Preliminary Injunction just in case, and as an effort to stop any further unlawful conduct which might occur, said motion was set for November 21st as aforementioned.

136.     Upon Stevenson returning to her home, she was shocked to learn that Celtic agents were moving her property to the street, in stark contrast to what the Sheriffs had relayed to her.

137.     At that moment, the Celtic and its agents' actions were volatile and deprived Stevenson of her property without due process of law.

138.     That at that time, Stevenson called the offices of Attorneys Prince and Carlucci to speak with Carlucci to inform him of the volatile eviction taking place and urged him to have his clients cease their unlawful actions pursuant to the pending October 29th Motion to Reconsider and the subsequent hearing set for December 5th.

139.     Carlucci was quick to dismiss Stevenson and upon asking what authority Stevenson relied on, she informed him she relied on Section 2-1203 of Illinois law, which states with specificity[1]:

> Motions       after       judgment       in       non-jury       cases.
>
> (a) In all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the

---

[1] Upon research and available information Stevenson learned later that she also was legally entitled to a stay of enforcement of judgment and protections under Ill. Sup. Ct. R. 274 which states with specificity, "A party may make only one postjudgment motion directed at a judgment order that is otherwise final and appealable. The motion must be filed either within 30 days of that judgment order or within the time allowed by any extensions. If a final judgment order is modified pursuant to a postjudgment motion, or *if a different final judgment or order is subsequently entered, any party affected by the order may make one postjudgment motion directed at the superseding judgment or order. Until disposed, each timely postjudgment motion shall toll the finality and appealability of the judgment or order at which it is directed*". *Rule 274 - Multiple Final Orders and Postjudgment Motions*, Ill. Sup. Ct. R. 274

court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief.

(b) Except as provided in subsection (a) of Section 413 of the Illinois Marriage and Dissolution of Marriage Act, **a motion filed in apt time stays enforcement of the judgment** except that a judgment granting injunctive or declaratory relief shall be stayed only by a court order that follows a separate application that sets forth just cause for staying the enforcement (emphasis added).

140. At that moment when Carlucci refused to adhere to the strictures of applicable law and refused to instruct his clients to cease with the deprivation of Stevenson's property without due process he violated her 14th Amendment right.

141. Further the negligence of Carlucci in moving forward with the unlawful eviction after learning of Stevenson's timely postjudgment motion filing was a violation of her 14th Amendment right.

142. On November 14th, upon the Oak Lawn PD refusing to enforce the Emergency Order of Protection against Stevenson's stalker and abuser deprived her of her right to liberty and due process and violated her 14th Amendment right.

143. On November 14th, upon Oak Lawn PD refusing to deter Royal Oaks and Celtic agents from destruction of Stevenson's property and home deprived her of her rights to liberty and property without due process and violated her 14th Amendment rights.

144. On November 14th, upon Oak Lawn PD issuing a citation to Stevenson for standing in front of her property and attempting to secure her belongings in her home from further damage deprived her of her rights to liberty and property without due process and violated her 14th Amendment rights.

145. On November 15th upon Oak Lawn PD refusal to enforce and serve the emergency orders of protection upon Preissler and Burns, this action deprived Stevenson of her rights to liberty without due process and violated her 14th Amendment right.

146. On November 15th upon Oak Lawn PD arresting Stevenson without just cause for standing in front of her home deprived her of her liberty and property without due process and violated her 14th Amendment rights.

147. On or about November 21st Stevenson appeared in front of Judge Castillo to present her motions including, the Emergency TRO, the Emergency Motion for Clarification, the Rule to Show Cause, and the October 29th Motion to Reconsider (which the court advanced). See November 21st Order attached as **Exhibit 19**.

148. On or about November 22nd Stevenson requested that Prince restore possession of her home and property

149. Upon Judge Castillo informing Stevenson that "all motions are denied" without a fair and impartial hearing violated her 14th Amendment right concerning due process.

150. Upon Judge Castillo wrongfully applying Ill. Sup. Ct. R. 274 and informing Stevenson that she "could not keep filing postjudgment motions" violated her 14th Amendment right to due process.

151. Upon Judge Castillo refusing to restore possession of Stevenson's home and property to her immediately upon Stevenson's request was a violation of her 14th Amendment right to due process.

152. Thus and upon Stevenson filing her aptly timed Motion to Reconsider on October 29th which was well within the thirty (30) days allowed by applicable law, and more than two (2) weeks before the eviction was actually carried out, she was well within her rights to remain in her

property up and until further ruling of the court on December 5th and should NOT have been evicted or unlawfully dispossessed by the actions of ANY of these Defendants.

153.    For these reasons stated and affirmed above, Plaintiff Brittaney M. Stevenson believes that her expressed right to life, liberty, and property have been deprived by these bad actors on various occasions and having done so without affording Stevenson the right to due process of law as stated in this 14th Amendment to the U.S. Constitution.

154.    That as a matter of law Stevenson is entitled to monetary and injunctive relief for the harms that her and her children have and continue to suffer.

155.    That said relief and damages should be determinable by a trial by a jury of her peers to assess the level and severity of harm caused by these actors and their volatile actions.

156.    **WHEREFORE**, Plaintiff, Brittaney M. Stevenson respectfully requests that this court enter judgment against Defendants as follows:

a.   Order the Defendants to pay compensatory damages in an amount certain to be proven at trial;

b.   Order the Defendants to pay punitive damages in an amount certain to be proven at trial;

c.   Award Plaintiff reasonable attorneys' fees, expert fees, or any other fees or costs associated with prosecuting this action; and

d.   Award Plaintiff pre- and post-judgment, interest, costs, and such other further relief this Court may deem just and appropriate.

## <u>COUNT II</u>
### VIOLATION OF STEVENSON'S 5TH AMENDMENT RIGHT TO DUE PROCESSS AND SUBSTANTIVE DUE PROCESS
### Stevenson v. All Defendants

157.    In the alternative and without prejudice to any of Plaintiff's other claims, Plaintiff re-states and re-alleges every allegation contained in Paragraphs 1 through 156 of this Complaint as though set forth more fully herein.

158.     Throughout the whole of the U.S. Constitution only one phrase inclusive of eleven words is repeated twice verbatim, and that is "***deprived of life, liberty, or property, without due process of law".***

159.      The above phrase is mentioned exactly twice due to how important this nation's forefathers perceived these rights to be.

160.     Both this 5th Amendment and the 14th, mention this expressed right and contain the due process clause.

161.     Thus, Stevenson was born and raised in the United States and is thus a U.S. citizen.

162.     That as such Stevenson is guaranteed the expressed protections of the U.S. Constitution.

163.     That from about November 12, 2024 to present Stevenson's expressed right not to be deprived of life, liberty or property, without due process of law in accordance with the 5th Amendment was violated by all named defendants in this action.

164.     That on the morning November 12th, Cook County Sheriff's entered Plaintiff's home without a proper eviction order.

165.     That Cook County Sheriff's ("the Sheriffs") informed Stevenson that they were "carrying out an eviction order from October 18th".

166.     At that moment the Sheriffs' actions were volatile of Stevenson's right to due process before being deprived of her property.

167.     Stevenson informed the Sheriffs that there was no valid eviction order from October 18th, further Stevenson informed the Sheriffs that she had filed a timely Section 2-1203 postjudgment motion in accordance with Ill. Sup. Ct. R. 274 to reconsider said October 18th Order

on October 29th; and that Notice had been provided to the Sheriffs office via us regular mail and fedex per proper protocol on October 31st and November 9th, respectively.

168.     Stevenson informed the Sheriffs that due to filing such a motion and the court date having not passed she was legally entitled to a "stay of enforcement of judgment" as articulated in Section 2-1203 and thus the eviction must not proceed.

169.     That a certain female sheriff approached Stevenson and told her to "go to the court house to get the evidence of that and bring it back…no one is moving you out of your house today", but that remained untrue. At that moment, the Sheriffs' actions were volatile and deprived Stevenson of her property without due process of law.

170.     With that belief in hand, Stevenson went to the courthouse to obtain a file-stamped copy of the October 29th Motion to Reconsider.

171.     While there and out of an abundance of caution, Stevenson filed an Emergency Motion for TRO and Preliminary Injunction just in case, and as an effort to stop any further unlawful conduct which might occur, said motion was set for November 21st as aforementioned.

172.     Upon Stevenson returning to her home, she was shocked to learn that Celtic agents were moving her property to the street, in stark contrast to what the Sheriffs had relayed to her.

173.     At that moment, the Celtic and its agents' actions were volatile and deprived Stevenson of her property without due process of law.

174.     That at that time, Stevenson called the offices of Attorneys Prince and Carlucci to speak with Carlucci to inform him of the volatile eviction taking place and urged him to have his clients cease their unlawful actions pursuant to the pending October 29th Motion to Reconsider and the subsequent hearing set for December 5th.

175.   Carlucci was quick to dismiss Stevenson and upon asking what authority Stevenson relied on, she informed him she relied on Section 2-1203 of Illinois law, which states with specificity:

> Motions        after        judgment        in        non-jury        cases.
>     (a) In all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief.
>     (b) Except as provided in subsection (a) of Section 413 of the Illinois Marriage and Dissolution of Marriage Act, ***a motion filed in apt time stays enforcement of the judgment*** except that a judgment granting injunctive or declaratory relief shall be stayed only by a court order that follows a separate application that sets forth just cause for staying the enforcement (emphasis added).

176.   At that moment when Carlucci refused to adhere to the strictures of applicable law and refused to instruct his clients to cease with the deprivation of Stevenson's property without due process he violated her 5th Amendment right.

177.   Further the negligence of Carlucci in moving forward with the unlawful eviction after learning of Stevenson's timely postjudgment motion filing was a violation of her 5th Amendment right.

178.   On November 14th, upon the Oak Lawn PD refusing to enforce the Emergency Order of Protection against Stevenson's stalker and abuser deprived her of her right to liberty and due process and violated her 5th Amendment right.

179.    On November 14th, upon Oak Lawn PD refusing to deter Royal Oaks and Celtic agents from destruction of Stevenson's property and home deprived her of her rights to liberty and property without due process and violated her 5th Amendment rights.

180.    On November 14th, upon Oak Lawn PD issuing a citation to Stevenson for standing in front of her property and attempting to secure her belongings in her home from further damage deprived her of her rights to liberty and property without due process and violated her 5th Amendment rights.

181.    On November 15th upon Oak Lawn PD refusal to enforce and serve the emergency orders of protection upon Preissler and Burns, this action deprived Stevenson of her rights to liberty without due process and violated her 5th Amendment right.

182.    On November 15th upon Oak Lawn PD arresting Stevenson without just cause for standing in front of her home deprived her of her liberty and property without due process and violated her 5th Amendment rights.

183.    On or about November 21st Stevenson appeared in front of Judge Castillo to present her motions including, the Emergency TRO, the Emergency Motion for Clarification, the Rule to Show Cause, and the October 29th Motion to Reconsider (which the court advanced).

184.    On or about November 22nd Stevenson requested that Prince inform his client to restore possession of her home and property and he refused stating that possession belonged to his client.

185.    On or about November 25th, 26th, and 27th Stevenson requested that Prince inform his client to restore possession of her home and property and he refused stating that possession belonged to his client.

186.     Yet and unfortunately Prince refused, but his actions were volatile and continue to contribute to Stevenson deprivation of liberty and property against her 14th Amendment rights.

187.     On or about November 25th, 26th, and 27th Stevenson requested that Prince inform his client to restore possession of her home and property and he refused stating that possession belonged to his client.

188.     Yet and unfortunately Prince refused, but his actions were volatile and continue to contribute to Stevenson deprivation of liberty and property against her 5th Amendment rights.

189.     Upon Judge Castillo informing Stevenson that "all motions are denied" without a fair and impartial and continued to withhold possession to Stevenson's home without a hearing violated her 14th Amendment right concerning due process.

190.     Upon Judge Castillo wrongfully applying Ill. Sup. Ct. R. 274 and informing Stevenson that she "could not keep filing postjudgment motions" violated her 14th Amendment right to due process.

191.     Upon Judge Castillo refusing to restore possession of Stevenson's home and property to her immediately upon Stevenson's request was a violation of her 14th Amendment right to due process.

192.     Thus and upon Stevenson filing her aptly timed Motion to Reconsider on October 29th which was well within the thirty (30) days allowed by applicable law, and more than two (2) weeks before the eviction was actually carried out, she was well within her rights to remain in her property up and until further ruling of the court on December 5th and should NOT have been evicted or unlawfully dispossessed by the actions of ANY of these Defendants.

193.     For these reasons stated and affirmed above, Plaintiff Brittaney M. Stevenson believes that her expressed right to life, liberty, and property have been deprived by these bad

actors on various occasions and having done so without affording Stevenson the right to due process of law as stated in this 5th Amendment to the U.S. Constitution.

194.    That as a matter of law Stevenson is entitled to monetary and injunctive relief for the harms that her and her children have and continue to suffer.

195.    That said relief and damages should be determinable by a trial by a jury of her peers to assess the level and severity of harm caused by these actors and their volatile actions.

196.    **WHEREFORE**, Plaintiff, Brittaney M. Stevenson respectfully requests that this court enter judgment against Defendants as follows:

e.    Order the Defendants to pay compensatory damages in an amount certain to be proven at trial;

f.    Order the Defendants to pay punitive damages in an amount certain to be proven at trial;

g.    Award Plaintiff reasonable attorneys' fees, expert fees, or any other fees or costs associated with prosecuting this action; and

h.    Award Plaintiff pre- and post-judgment, interest, costs, and such other further relief this Court may deem just and appropriate.

## <u>COUNT III</u>
### VIOLATION OF STEVENSON'S 4TH AMENDMENT RIGHT REGARDING UNLAWFUL SEARCH AND SEIZURE
### Stevenson v. All Defendants

197.    In the alternative and without prejudice to any of Plaintiff's other claims, Plaintiff re states and re-alleges every allegation contained in Paragraphs 1 through 196 of this Complaint as though set forth more fully herein.

198.    The 4th Amendment guarantees "*The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized*".

199. With specific regard to Stevenson's rights under this amendment, Judge Castillo upon refusing to uphold applicable state law in the form of Section 2-1203 and Ill. Sup. Ct. R. 274 on various occasions from November 12th to present and protect Stevenson's home from unlawful seizure by the Sheriffs, Royal Oaks, Celtic and others due to the "stay of enforcement of judgment" violated Stevenson's 4th amendment rights.

200. Due to the Sheriffs' unlawful entry into Stevenson's home on November 12th and their subsequent refusal to adhere to Stevenson's protections under the applicable state laws and allowing Royal Oaks, Celtic and others to unlawful seize and bar Stevenson access to her home and property due to the "stay of enforcement of judgment" and due process violated Stevenson's 4th amendment rights.

201. From November 12th to present upon Royal Oaks' agents unlawfully seizing and barring access to Stevenson's home in violation of the "stay of enforcement of judgment" and due process violated Stevenson's 4th amendment rights.

202. From November 14th to present upon Oak Lawn PD unlawfully barring access to Stevenson's home and property in violation of applicable state law and due process violated Stevenson's 4th amendment rights.

203. From November 12th to present upon Royal Oaks unlawfully barring access to and seizing Stevenson's home and property in violation of applicable state law and due process violated Stevenson's 4th amendment rights.

204. From November 12th to present upon Celtic unlawfully barring access to and seizing Stevenson's home and property in violation of applicable state law and due process violated Stevenson's 4th amendment rights.

205.    From November 12th to present upon Attorney Prince allowing his clients to bar and seize Stevenson's home and property in violation of applicable state law and due process violated Stevenson's 4th amendment rights.

206.    From November 12th to present upon Attorney Carlucci allowing his clients to bar and seize Stevenson's home and property in violation of applicable state law and due process violated Stevenson's 4th amendment rights.

207.    **WHEREFORE**, Plaintiff, Brittaney M. Stevenson respectfully requests that this court enter judgment against Defendants as follows:

i.    Order the Defendants to pay compensatory damages in an amount certain to be proven at trial;

j.    Order the Defendants to pay punitive damages in an amount certain to be proven at trial;

k.    Award Plaintiff reasonable attorneys' fees, expert fees, or any other fees or costs associated with prosecuting this action; and

l.    Award Plaintiff pre- and post-judgment, interest, costs, and such other further relief this Court may deem just and appropriate.

<u>**CONCLUSION**</u>

In summation, all of the named Defendants have violated Stevenson within the numerous facets outlined in the foregoing detailed Complaint. Each defendant individually participated and/or was complicit in actions which have severely and irreparable caused Stevenson and her children harm and violated her 4th, 5th, and 14th amendment rights with reckless disregard and abandon. Further Defendants, Judge Castillo, Royal Oaks, Celtic, Attorney Prince, and Attorney Carlucci have all conspired and continue to be implicit in the explicit violations of Stevenson's constitutional rights to her immediate and continued detriment. So thus and for these reasons Stevenson files this Complaint under Section 1983 in an effort to shed light on the grievous

matters and invoke her rights under federal jurisdiction in hopes that she will be protected and

Defendants will be estopped from further harm.

DATED: December 4, 2024

Respectfully Submitted,

/s/Brittaney M. Stevenson

Brittaney M. Stevenson
10048 S. Pulaski Rd, #3K
Oak Lawn, IL 60453
P: 630-440-2764
E: brittaneystevenson@gmail.com

## **VERIFICATION**

Under penalties of perjury as provided by law, the undersigned, BRITTANEY M. STEVENSON,
PLAINTIFF herein, certifies that the statements set forth in the document/pleading, are true and correct,
except as to matters therein stated to be on information and belief and, as to such matters, the undersigned
certified as aforesaid that she verily believes the came to be true.

/s/Brittaney M. Stevenson

## **JURY DEMAND**

NOW COMES Plaintiff, Brittaney M. Stevenson, pro se and respectfully requests that this court

hold a trial by jury on all merit-based claims herein.

Respectfully Submitted,

/s/Brittaney M. Stevenson